Mr. Lambrose. Thank you, Your Honor. Good morning. My name is John Lambrose. I'm here on behalf of the Petitioner Appellant, Mr. Reed, and I would like to reserve about a minute, if that would please the Court. The question presented in this case is somewhat unique because now we have a situation or at least hopefully we have a situation in which the Petitioner gets to hold the State to a procedural deficiency. Essentially what has happened or what happened in the Court below was a violation of this Circuit's law under beginning really I guess in the post-Trest cases with Boyd and Merkel and then continuing all the way through to the recent cases that I sent the 28J letters to the Court on Morrison v. Mahoney and Shaker v. Krogan. Just to set the stage, Mr. Reed filed an amended petition. After litigating whether or not the petition was timely under 2244d1, Mr. Reed prevailed. The district court below entered an order directing the Attorney General to file an answer. That's at Clerk's Record 25. The reason that I think that that's significant is that under this Court's recent decision in Morrison, I believe that that could, that should be characterized or the pleading that followed that should be characterized as the State's next responsive pleading. And if that. They didn't file an answer, though. They filed a motion to dismiss, but they were directed to file an answer. And even though they called it a motion to dismiss, it was essentially an answer because in that motion to dismiss, they asserted all of their procedural defenses. Unfortunately, not, well, they asserted the procedural defenses they wanted to assert. They did not assert the Coleman v. Thompson, what I would characterize as the anticipatory default defense. As to Grounds 1 and 2, the grounds that are relevant to this appeal, they asked for a Rose v. Lundy dismissal. They asked for a dismissal without prejudice. They did not ask for a Coleman v. Thompson dismissal. This was their responsive pleading under Morrison. This was the pleading under Vang, I believe, that they either had to fish or cut bait. They had to assert their defense or not assert the defense. And if they don't assert, if they did not assert the defense, then obviously Vang, Franklin, Morrison and Chaker v. Krogan, Morrison and Chaker, the cases that came down after briefing was submitted, compel a decision reversing the district court's notation of the sua sponte procedural default. Is there any authority that says what we've called, or you're calling an anticipatory default as something the State has to push forward at the earliest opportunity? I think that Franklin speaks to that, because in particularly, I don't usually do this, but I think that Judge O'Scanlan in his dissent pretty much sets forth what happened in Franklin, because he was concerned that the majority reached the wrong decision, but it was the correct decision. And what Judge O'Scanlan pointed out was that there are two types of procedural defaults. One is the one, the garden variety, where the State court, the highest State court said, you know, we're not going to reach your constitutional claim because you didn't comply with the State procedural rule. The other one is the Petitioner gets to Federal court with an unexhausted claim and can't go back to State court because there is no available State process under subsection I-2254-B1-Bi. That's the anticipatory default. And Franklin says, yes, you can waive that. Franklin doesn't involve something where the issue hadn't come up before, does it? Yes. In an odd way. What happened in Franklin was that the State, it was an ineffective assistance of counsel claim. And the State, it was litigated in State court and it was denied by the California Supreme Court. Then it was litigated in district court on the merits, no procedural defense asserted until on appeal. And on appeal, the State for the first time said, well, wait a second, this component of your IAC claim was never exhausted, so because of that, under Oregon law, you don't have a remedy because there is no available State process, an anticipatory default defense. And what the majority held in Franklin was, listen, you waived it. Whether it's anticipatory or the garden variety default, you've waived it. And, you know, the reason I, again, I'll bring up Judge O'Scanlan's dissenting opinion was he said, well, you know, that's just dicta. The majority spoke back to that issue, said, no, this is not dicta because even though we could have decided this claim and denied it on the merits under 2254b-3, I believe, this isn't an exhaustion case. This is a default case. This is about procedural default. And I've got to tell you, I think Franklin and certainly Morrison and Shaker and Vang, those are the waiver cases. Those are the cases that say if the State had a chance and didn't present the default, tough, case closed. We hear it on the merits. And those cases, that line of case is control. This is, this isn't one of those cases like Boyd v. Thompson where the district court, without an appearance by the State, sua sponte enters the default in the interest of judicial efficiency and comity. And even in the Thompson-Merkel line of cases, the State, or the Petitioner at the very least, something that Mr. Reed did not get an opportunity to do, must have notice of the default and an opportunity to respond to the adequacy, independence of the default and if there's cause and prejudice to overcome the default. Now, to me, that's the, that's my fallback argument. I think that the holding in this case should be they waived the default by not asserting it. How can that be squared with Coleman? I'm sorry? The notion that there's a permanent waiver by the State. How can that be squared with Coleman? Well, in Trest, the Supreme Court reaffirmed a long line of authority that characterizes procedural default as a, as an affirmative defense that can be waived. And Trest is post Coleman. And what Franklin instructs that, is that AEDPA did not change that dynamic. In other words, procedural default is still a defense that can be waived, notwithstanding the fact that exhaustion must be waived by express statement of counsel. So in answer to that. Did Trest speak to what we're calling an anticipatory procedural default? No. No. What Trest, Trest exclusively, the holding in Trest was an appellate, a Federal appellate court does not have to note a procedural default sua sponte. The question that Trest left open was, when and under what circumstances can a Federal court do that? So quite frankly, it's an open question, with regard to the U.S. Supreme Court, as to whether or not a Federal court can even note a sua sponte procedural default. Which, you know, I think is kind of interesting, but not really germane. It would be sua sponte in our case, though, because the district court noted the default. Well, a Federal court. What I'm talking about is any 2254 court. Whether or not any 2254 court can note a procedural default. Now Coleman said that it could. Well, Coleman said it could, so long as it's not sua sponte. Coleman was not a case in which the Court noted the default sua sponte. I think, and that's Coleman, when Coleman was talking about, you know, the seminal case talking about adequacy and independence, they also, the Coleman court, in a footnote, I believe footnote one, citing to Harris, said, Alan, you know, the other way that you can default, Petitioner, is if you come to Federal court with an unexhausted claim that you have no State remedy for. If you're in that boat, you're defaulted, and you better be able to show inadequacy or cause and prejudice. So really, you know, Coleman gives us kind of the construct, but it's not a waiver sua sponte case. And this case that's before the Court right now, Mr. Reed's case, is a pure waiver case controlled by Vang, Franklin, Morrison, and Chaker. Unless the Court has any questions, I'll reserve my minute and a half. Thank you. Mr. Wilson. Thank you, Your Honors. My name is Dennis Wilson, appearing on behalf of the Respondent Appellee. This case is governed by Boyd v. Thompson and Morrison v. Mahoney. In Boyd v. Thompson, this Court held that a habeas corpus court should exercise its discretion to raise sua sponte procedural default, if doing so furthers the interests of comedy, federalism, judicial economy, and justice, so long as the circumstances warrant. Mr. Lambrose suggests that even if that were the rule, that here it's waived because the Court had ordered an answer and you filed a motion to dismiss. Your response to that? Your Honor, I think that I'm not exactly sure if the Court used the word answer. I think the Court may have used the word response. I'm not positive. But it's generally the custom and practice in civil proceedings, and this is what Morrison v. Mahoney held, is that you can file a motion to dismiss before you file your answer, and the Court held that a motion to dismiss is not a response of pleading and the State is not required to raise its procedural defenses until it files a response of pleading. The State still has not filed its response of pleading. It's only filed a motion to dismiss. So it's clearly not waived. That was one of the requirements of Boyd v. Thompson. Basically, there's three different things that the Court has to consider. One was the procedural default easily identifiable. Second, did the State impliedly or expressly waive the procedural default defense? And, again, in this case, it had not waived that procedural default defense. It hadn't even raised it yet. It did its normal. Because these claims were unexhausted, the State filed a motion to dismiss based on the fact that they hadn't been unexhausted. Claim three had been exhausted, so they filed a procedural default defense. And that takes me into the third. I'll just touch first on the procedural default being easily identified. In this case, Mr. Reed was convicted in 1995. He had one year. He didn't appeal, so he had one year from the date of his conviction to file his petition for writ of habeas corpus. This case clearly was almost seven years after he'd filed his petition for writ of habeas corpus. He also had filed another petition two years after his judgment of conviction that the State courts held that that case was procedurally defaulted. So if he did it in that case, he'll surely do it again in this case. And that's what the district court, the Federal District Court, recognized. And that's why it raised to respond to the procedural default defense, which it's entitled to do. The other main requirement of Boyd is that the Petitioner be given an opportunity to respond to the argument for dismissal. In this case, the State did not raise procedural default, or had not yet raised procedural default as to the two unexhausted claims, but did raise procedural default to the exhausted claim. The court heard that argument. The same argument would be argued to Claims 1 and 2 as was made to Claim 3. If this Court were to remand to district court Claims 1 and 2, the same argument that was raised in Claim 3 would again be raised before the district court. Because that argument was raised there, it's the same argument. It doesn't make any sense to have it go back to the district court. He's already had the argument. That requirement of Boyd is satisfied because he did have an opportunity to respond to that argument. The argument wouldn't be any different. It's the same argument that was raised in the application for the certifiable issues. Based on that, Your Honors, bear with me for a second. The district court's dismissal of Mr. Reed's petition on the basis of procedural default furthered the interests of comedy, federalism, and judicial economy. It would have been a waste of scarce judicial resources to go back to state court. Under Coleman v. Thompson, he can anticipate that that is going to happen. And that's what he did. He had already heard the procedural default argument and raised that on his own to prevent that waste of judicial resources. The default is easily identifiable. He did have an opportunity to present his cause and prejudice justification to the district court, which the district court did not file, did not find persuasive. The court should affirm the district court's dismissal of the petition. All right. Thank you, Mr. Wilson. Mr. Lambros. Thank you. Just in my minute and 30 seconds, I want to take just a few seconds, and at the risk of sounding a bit maudlin. This was a 16-year-old boy who went to prison in 1994 and still has been in prison after having pled guilty to first-degree murder. And our position was that was an uncounseled guilty plea and a bad guilty plea. He's been in prison that long and he's had no review of these Federal claims at all, state or Federal review. Now, just to clarify a few things, I can rep and I – it was my oversight. I should have put Clerk's Record 25 in the record. I can represent to this Court that when Judge Hagan entered the interim order denying the 2244-D1 motion, he ordered an answer pursuant to Rule 5. And that can be found at Clerk's Record 25. Morrison, again, I believe Morrison controls this. There's language in Morrison at page – at 399, Fed 3rd, 1046. A motion to dismiss, and I quote, is not a pleading unless a court has ordered otherwise separate motions to dismiss may be filed – may be filed asserting different affirmative defenses. I believe this is one of those situations where a court has ordered otherwise. And what Judge Hagan ordered was the next responsive pleading. Now, counsel for the Attorney General is arguing that Boyd controls. Boyd doesn't control this case. There was never any entry of an appearance by the State in Boyd. And to argue that if we were to get a remand so we could assert our adequacy defenses, that they would be the same as for Grounds 3 is absolutely wrong. Why? Because it's exactly the same ball of wax. Well, it's not, because one thing that was the only thing that was argued with respect to Ground 3, which was a Roe v. Flores-Ortega claim, my lawyer didn't file a notice of appeal, was cause and prejudice. One thing that we would argue with regard to the adequacy of the default for Grounds 1 and 2 is that the imposition of that default under these circumstances under Nevada law was a new rule. This was not a rule that was – that had been imposed until it was imposed on Mr. Reid. And that is that, you know, a dismissal without prejudice, the State court's dismissal without prejudice to leave to file another State habeas petition would operate as a dismissal with prejudice. District court and the State court both dealt with that. Pardon me? The district court and the State court both dealt with the argument that the dismissal with prejudice somehow. But not in the context – not in the context – and again, this is habeas hair splitting, but here we are. Not in the context of adequacy. It was in the context of whether or not Mr. Reid had any fair State process available to him under subsection ii. This is an adequacy argument that I would be making. But in any event, I should win this thing because they waived the default. Okay. Thank you. Thank you. Counsel, both of you. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton